IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

MIDWEST DRILLED FOUNDATIONS &
ENGINEERING, INC.,

    Plaintiff,

    v.                                                             Civil No. 12-1333 (SEC)

ZUCONE ENGINEERING CORP.,

    Defendant.

**OPINION AND ORDER**

    Before the Court are the defendant's motion to dismiss (Docket # 13), and the plaintiff's response thereto (Docket # 14). After reviewing the filings and the applicable law, the defendant's motion is **DENIED**.

**Factual and Procedural Background**

    A succinct introduction to the facts of this case suffices to set the stage for the analysis. The plaintiff, Midwest Drilled Foundations & Engineering, Inc. ("Midwest"), a corporation organized under the laws of Wisconsin, filed this diversity suit against the defendant, Zucone Engineering Corp. ("Zucone"), a Puerto Rico corporation. Advancing two claims for collection of monies against Zucone, Midwest seeks a total of $81,048.650 allegedly due under a contract for the installation of caissons. Docket # 1, ¶¶ 19-22. Midwest claims $44,783.73 for backcharges and $36,264.92 for amounts that Zucone, pursuant to certain provisions of the Puerto Rico Internal Revenue Code, withheld from it. Id.

    On July 13, 2012, Zucone moved to dismiss the complaint, arguing that Midwest cannot meet the jurisdictional amount of $75,000. See 28 U.S.C. § 1332(a). Specifically, Zucone maintains, without much in the way of elaboration, that because Midwest cannot demand reimbursement of the amounts withheld, the amount in controversy is only $44,783.73—the amount pertaining to the backcharges.

**Civil No. 12-1333 (SEC)**                                                              Page 2

Midwest demurs on two alternate grounds. First, Midwest argues that Zucone had no obligation to withhold income taxes from payments due to Midwest but improperly did so. And second, assuming that Zucone properly withheld such funds, Midwest faults Zucone for failing to provide it with any information regarding the withholding, which in turn deprived it of claiming a tax credit. Docket # 14, p. 6.

**Standard of Review**

FED. R. CIV. P. 12(b)(1) is the proper vehicle for challenging a court's subject matter jurisdiction. Valentín v. Hospital Bella Vista, 254 F.3d 358, 362-63 (1st Cir. 2001). Under this rule, a wide variety of challenges to the Court's subject matter jurisdiction may be asserted. Id. (citations omitted). As relevant here, Rule 12(b)(1) is the appropriate vessel for analyzing 28 U.S.C. § 1332(a)'s amount-in-controversy requirement. Soprema, Inc. v. Workers Corp., 485 F.Supp. 2d 1, 3 (D.P.R. 2007). When faced with a jurisdictional challenge, courts must "[g]ive weight to the well-pleaded factual averments in the operative pleadings . . . and indulge every reasonable inference in the pleader's favor." Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Sec., 510 F.3d 1, 8 (1st Cir. 2007).

A plaintiff faced with a motion to dismiss for lack of subject matter jurisdiction has the burden to demonstrate that such jurisdiction exists. E.g., Lord v. Casco Bay Weekly, Inc., 789 F. Supp. 32, 33 (D. Me.) (citations omitted), reh'g denied, 789 F. Supp. 32, 36 (D. Me. 1992); see also Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 551 (1st Cir. 2005) ("The burden of establishing jurisdiction rests with the party who asserts its existence.") (citation omitted). In this context, this court is empowered to resolve factual disputes by making reference to evidence in the record beyond the plaintiff's allegations without having to convert the motion to dismiss into one for summary judgment. See Hernández-Santiago v. Ecolab, Inc., 397 F. 3d 30, 33 (1st Cir. 2005) (per curiam).

**Civil No. 12-1333 (SEC)**                                                                                               Page 3

**Applicable Law and Analysis**

*Amount-in-Controversy Requirement*

As related above, Zucone contends that Midwest falls short of meeting the $75,000 jurisdictional amount, thus depriving this court of subject-matter jurisdiction. For the reasons laid out below, the Court disagrees.

When determining whether a party meets the amount-in-controversy minimum, federal courts must apply the long-standing test established by the Supreme Court in St. Paul Mercury Indemnity Co. v. Red Cab Co. The Court described the so-called legal certainty test as follows:

> The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty that the claim is really for less than the jurisdictional amount to justify dismissal

303 U.S. 283, 288-89 (1938) (footnotes omitted). The First Circuit's decisions have interpreted the aforementioned passage "[t]o mean that 'legal certainty that the claim is really for less than the jurisdictional amount,' trumps the plaintiff's good faith in claiming for a larger amount." Esquilín-Mendoza v. Don King Prods., 638 F.3d 1, 4 (1st Cir. 2011) (citations omitted); accord Abdel-Aleem v. OPK Biotech LLC, 665 F.3d 38, 41 (1st Cir. 2012).

Under the St. Paul standard, a plaintiff's allegations "suffice[ ] unless questioned by the opposing party or the court." Stewart v. Tupperware Corp., 356 F.3d 335, 338 (1st Cir. 2004). Once challenged, "the party seeking to invoke jurisdiction has the burden of alleging with sufficient particularity facts indicating that it is not a legal certainty that the claim involves less than the jurisdictional amount." Id. Although a plaintiff may meet this burden by amending the pleadings, "[j]urisdiction is not conferred by the stroke of a lawyer's pen. When challenged, it must be adequately founded in fact." Diefenthal v. C.A.B., 681 F. 2d 1039, 1052 (1st Cir. 1982).

**Civil No. 12-1333 (SEC)**                                                                                                  Page 4

Here, the burden has shifted to Midwest to show with "'sufficient particularity' facts that in some way support the contention that there is more than $75,000 at stake." Abdel-Aleem 665 F.3d at 42 (citation omitted). Midwest meets this burden.

The analysis begins with the substantive law, which, in this diversity action, is controlled by the Puerto Rico Internal Revenue Code. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78(1938); Univ. Emergency Med. Found. v. Rapier Invs., Ltd., 197 F.3d 18, 19 n. 1 (1st Cir.1999). The Puerto Rico Internal Revenue Code of 2011 provides in pertinent part that "foreign corporations not engaged in industry or business in Puerto Rico", will be taxed on the amount received from sources within Puerto Rico. See P.R. Laws Ann. tit. 13, § 1092.01(a)(1)(A) (certified translations of all cited statutes provided by the parties at Docket # 15-1). Section 1062.08(b)(1) in turn provides that those obligated to deduct and withhold such taxes (the "Withholding Agent"), must remit them to the Secretary of the Treasury Department, together with an informative declaration showing the amount of taxes withheld. The Withholding Agent must also provide a copy to the person whose taxes were withheld. See id. §1062.08(j) (alterations in original). The amount of tax withheld under these sections "shall be admitted as a tax credit." Id. § 1053.02. But for the credit to be sanctioned by the Treasury Department, the corporation's income tax return must contain a copy of the informative declaration provided by the Withholding Agent.

In this case, the complaint states that Zucone made the tax withholdings but never remitted them to the Treasury Department. Docket # 1, ¶¶ 13-16. It also alleges that Zucone never provided Midwest with the requisite informative declaration. Id. If these allegations were true, Midwest would be unable to claim the tax credit in question, as it would have no evidence to support its request for reimbursement from the Treasury Department. So viewed, Zucone's failure to neither remit the tax withholdings nor to provide Midwest with the informative declaration appears to have caused Midwest a loss of $36,264.92. Such an alleged loss, standing alone, suffices to deny Zucone's motion to dismiss. But there is more.

**Civil No. 12-1333 (SEC)**                                                                 Page 5

The rules and regulations of the Puerto Rico Treasury Department provide in pertinent part that withholding agents have no obligation to withhold taxes from payments due to a foreign corporation when the foreign corporation is engaged in trade or business in Puerto Rico. See Docket 15-1, pp. 2-3 (providing a certified translation of article 1150-2(a) of regulation 5901 of the Puerto Rico Treasury Department). In such a scenario, the foreign corporation "[s]hall give written notice to the person who pays such income that it is not subject to the provisions on withholding at source under Section 1150 of the [Internal Revenue] Code." Id. The regulation provides that the letter of the corporation "[s]hall contain the grounds or criteria under which it has determined that it is engaged in industry or business in Puerto Rico and the address of its office or place of business . . ." Id. (alterations in original).

Here, the complaint states that Midwest sent various letters to Zucone, asking it not to send the amounts withheld to the Treasury Department because the withholding exception applied, since Midwest was registered as a merchant in Puerto Rico. See, e.g., Docket # 1-4, p. 1. Without pointing to any legal authority, Zucone argues that because Midwest has not provided it with a certificate of merchant registration, it had the legal obligation to withhold the amount in question. Docket # 13, p. 6. But Midwest correctly points out that regulation 5901 does not mandate the Withholding Agent to request any certificate to the foreign corporation; it merely requires the foreign corporation to notify in writing the reasons why the withholding disposition is inapplicable to it. See Docket 15-1, pp. 2-3 (citing regulation 5901). And the pleadings appear to show that Midwest has satisfied such a requirement. See Docket # 14-2. If, in fact, Midwest did so, and Zucone improperly withheld the funds in question, Midwest can likewise make a plausible case for relief on this front.

Although Zucone insists that Midwest is not entitled to demand from Zucone reimbursement of the amounts withheld, it neither cites case law nor provides a developed discussion supporting its contention that Midwest is legally impeded to recover such a plausible loss. That should suffice to deem Zucone's argument waived. See King v. Town of Hanover, 116 F.3d 965, 970 (1st Cir.1997) ("[I]t is not enough merely to mention a possible argument in

**Civil No. 12-1333 (SEC)**                                                                 Page 6

the most skeletal way, leaving the court to do counsel's work . . . Judges are not expected to be mindreaders. Consequently, a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." (citations and internal quotations marks omitted)). In any event, as concluded above, it appears from the complaint that Midwest has suffered a legally cognizable harm caused by Zucone's alleged negligence. Zucone's argument, therefore, is unavailing.[1]

**Conclusion**

As succinctly put by Midwest, either Zucone had to return the $36,264.92 to it, or Zucone had to remit $36,264.92 to the Treasury Department, so that Midwest could claim and receive its reimbursement. Either way, Midwest has stated a plausible claim for a loss of $36,264.92 on this front, which, together with the $44,783.73 for backcharges allegedly owed to Midwest, catapults its claim over the $75,000 threshold. Indulging all inferences in Midwest's favor, one "familiar with the applicable law . . . could objectively have . . . viewed [it] as worth [$75,000]." Coventry Sewage Assoc. v. Dworkin Realty Co., 71 F.3d 1, 6 (1st Cir. 1995). Because Midwest has shouldered its burden of showing that it is not a legal certainty that its claim involves less than $75,000, the Court possess jurisdiction to entertain this action. Consequently, Zucone's motion to dismiss is **DENIED**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 27thday of August, 2012.

*S/Salvador E. Casellas*
SALVADOR E. CASELLAS
U.S. Senior District Judge

---

[1] To the extent that Zucone's argument can be construed as a challenge to Midwest's standing under Article III to raise this claim, it also fails. "Standing under Article III of the Constitution requires that an injury be concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." United States v. Moloney (In re Price), 685 F.3d 1, 37 (1st Cir. 2012) (quoting Monsanto Co. v. Geertson Seed Farms, 130 S. Ct. 2743, 2752 (2010)). On its face, the complaint appears to allege the requisite Article III injury that is fairly traceable to Zucone's alleged negligent acts and redressable by a favorable ruling.